UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAWN WILSON,

        *Plaintiff,*

v.                             Case No.: 3:23-cv-1002-JEP-PDB

J.E. MOORE,

        *Defendant.*

                              /

## **ORDER**

### **I. Status**

Plaintiff, an inmate of the Federal Bureau of Prisons, is proceeding *pro se* on a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 1) against an officer with the Jacksonville Sheriff's Office, J.E. Moore. Plaintiff alleges Defendant Moore used excessive force during his September 2, 2021 arrest and denied him medical care for the injuries he sustained when he crashed his motorcycle while attempting to outrun police. *See* Doc. 1 at 4–5. Before the Court is Defendant Moore's Motion for Summary Judgment (Doc. 47) and Plaintiff's *pro se* Response in opposition (Doc. 62).

### **II. Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Plaintiff's Allegations

Plaintiff alleges that, after he crashed his motorcycle, Defendant Moore struck him about five to six times and dragged him by his helmet, still strapped to his head, across the road. Doc. 1 at 4–5, 12. He further implies Defendant Moore prevented him from receiving medical attention at the scene by telling EMTs that he was being "combative" and did not need medical attention, and at the jail, by "over-[riding] medical." *Id.* at 5, 12.

### IV. Motion & Response

Defendant Moore invokes qualified immunity. *See* Doc. 47 at 10–11. He supports his Motion with the following evidence: his own declaration (Doc. 48-1); the transcript of Plaintiff's deposition testimony (Doc. 48-2); and video evidence filed under seal, including footage from his own body worn camera

("BWC"), Officer Yates's BWC, Officer Pingry's BWC, and the camera from the sally-port area at the jail (Doc. S-51).[1]

In his Response, Plaintiff complains that Defendant Moore's counsel was "uncooperative and evasive" during the discovery process, and he has been denied crucial video and medical evidence. *See* Doc. 62 at 3–4. He also says that the video evidence Defendant Moore did provide is incomplete in that it does not show what happened before he was handcuffed, which is when he claims Defendant Moore punched him and pulled him across the road by his helmet. *Id.* at 9. Plaintiff requests that the Court deny Defendant Moore's Motion on the ground that he never received or reviewed the videos he requested. *Id.* at 10.

Although Plaintiff has not filed a motion seeking affirmative relief, his request implicates Rule 56(d) of the Federal Rules of Civil Procedure, which provides in part that a court may deny a Rule 56 motion or allow time for discovery before ruling on it if the "nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(1), (2). Plaintiff is not entitled to

---

[1] Video footage was provided on a thumb drive. That footage will be cited according to sealed document number (Doc. S-51), followed by a camera identifier (*i.e.*, "Moore BWC" for the footage from Defendant Moore's BWC or "SP" for footage from the sally-port) and a time stamp.

relief under Rule 56(d). Importantly, he does not provide an affidavit or declaration with "specified reasons" he cannot effectively oppose Defendant Moore's Rule 56 Motion.[2] Regardless, he has had ample time to conduct discovery. *See* Case Management & Scheduling Order (Doc. 32). The Court even granted Plaintiff's two motions for more time (90 days each) in which to conduct discovery. *See* Orders (Docs. 36, 41). During the discovery period, Defendant Moore made initial disclosures in accordance with Rule 26(a) and responded to Plaintiff's discovery requests. *See* Doc. 62 at 31–33, 45–47, 67. Plaintiff never filed a motion to compel complaining that Defendant Moore's discovery responses were insufficient.

Plaintiff now claims he missed the motion to compel deadline because a faulty fire sprinkler in his cell destroyed his legal papers and the Court's scheduling order. *Id.* at 35–36. Even if proffered through an affidavit or declaration, this excuse is unconvincing. Plaintiff had from July 2, 2024 until April 3, 2025, to conduct discovery. *See* Orders (Docs. 32, 36, 41). In addition,

---

[2] Plaintiff claims his Response is "a sworn affidavit and declaration," *see* Doc. 62 at 3, but it is not. "An affidavit is a sworn statement, meaning it is made under oath before a notary or other oath-taker and affixed with a notary seal. *Levitt v. U.S. Internal Revenue Serv.*, No. 2:24-CV-00284-SGC, 2025 WL 1745758, at *2 (N.D. Ala. June 24, 2025). Plaintiff's Response is not sworn under oath. He also does not include a statement, "I declare under penalty of perjury that the foregoing is true and correct," or a substantially similar statement. *See* 28 U.S.C. § 1746(2) (allowing for the use of unsworn verifications if the individual declares under penalty of perjury that his statements are true and correct).

according to a letter he provides as "proof" that a sprinkler head damaged property inside his cell, that incident appears to have occurred around July 2025, after the discovery period had closed. *See* Doc. 62 at 35. Had the sprinkler head broken before the April 3, 2025 discovery deadline, that incident does not explain why Plaintiff missed not one, not two, but three different deadlines for the filing of motions to compel.

Finally, Plaintiff does not explain with any specificity what facts he is missing and how those facts would assist him in opposing Defendant Moore's Motion. *See generally id.* "To invoke rule 56(d), a party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, but must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021) (internal quotation marks omitted). Plaintiff vaguely complains that the arrest report and the video evidence "conflict" on "numerous details," *see* Doc. 62 at 23, but as discussed below, the video evidence, which speaks for itself, captures all relevant interactions between Defendant Moore and Plaintiff. Thus, the Court will rule on the Motion for Summary Judgment.

## V. Law, Evidence & Conclusions

"In order to receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). There is no dispute that Defendant Moore was acting within his discretionary duties at the time of the incident. Thus, the burden shifts to Plaintiff to prove that Defendant "(1) violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Plaintiff must satisfy both prongs to survive a qualified-immunity defense. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

At the time of the events, it was clearly established that an arresting officer may not use excessive force, evaluated under an objective standard of reasonableness "without regard to [the officer's] underlying intent or motivation." *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989). It was also clearly established that an arresting officer violates an arrestee's constitutional rights if the officer is deliberately indifferent to the arrestee's known serious medical needs. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). However, the evidence demonstrates that Defendant Moore did not violate a clearly established constitutional right when arresting

7

Plaintiff. Indeed, the camera footage shows that Defendant Moore did not use any force against Plaintiff, either at the scene of the incident or during transport, nor did he deny or prevent Plaintiff from receiving necessary medical care for the injuries he sustained when he crashed his motorcycle while fleeing from police.

First, Plaintiff says in his Response that he was struck and dragged by his helmet "*before* [he] was handcuffed," Doc. 62 at 9 (emphasis added), and he testified at his deposition that Defendant Moore "was the first male officer to interact with him" and the one who hit him and tried to remove his motorcycle helmet, Doc. 48-2 at 19. According to BWC footage, Defendant Moore was not the first male officer to encounter Plaintiff after he crashed. *See* Doc. S-51, Moore BWC, 06:39:35–06:39:40. When Defendant Moore arrived, at least one other officer was already struggling to get Plaintiff into handcuffs, and Plaintiff was lying on the side of the road in the grass. *Id.* Defendant Moore and a female officer (who arrived when Moore did) assisted in handcuffing Plaintiff. *Id.*; *see also* Doc. S-51, Yates BWC, 06:39:43–06:40:09. Defendant Moore did not hit Plaintiff, nor did he pull on Plaintiff's helmet.[3] Given Defendant Moore did not

---

[3] Another male officer attempted to remove Plaintiff's helmet after he was handcuffed. That officer aggressively slapped the face shield of Plaintiff's helmet to open it, and he pulled hard on the helmet trying to remove it. *See* Doc. S-51, Yates BWC, 06:40:08–06:40:11. Plaintiff can be heard saying that he had the helmet strapped and his neck was hurting. *Id.*, 06:40:11–06:40:15. When that was occurring,

arrive on the scene until Plaintiff was nearly fully restrained and lying on a grassy area on the side of the road, Defendant Moore could not have "drug [Plaintiff] by [his] strapped helmet across the road," as Plaintiff alleges in his Complaint. *See* Doc. 1 at 5.

Second, Plaintiff testified at his deposition that "it took 40 minutes to get [to the jail], and [he] was slung around . . . . to the point where [he] was nauseous." Doc. 48-2 at 21–22. He claimed Defendant Moore drove so erratically to the jail that he was forced to wedge himself on the floor and had to be helped off the floor when they arrived at the jail. *Id.* at 16–18, 21–22, 31. In his Response to Defendant Moore's Motion, Plaintiff cites a Tenth Circuit decision, which held an arrestee stated a plausible excessive force claim where he alleged the officer intentionally drove recklessly, knowing the arrestee's handcuffs were too tight, "so as to toss [him] around the back seat . . . and place additional pressure on his wrists." *See* Doc. 62 at 13 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 640 (6th Cir. 2001)).

Contrary to Plaintiff's allegations, the BWC footage shows the ride to the jail took under twenty minutes, and it was not "erratic." *See* Doc. S-51, Moore BWC, 08:01:55–08:18:00. There were some bumps that caused the car

---

Defendant Moore was standing up, facing the opposite direction. *See* Doc. S-51, Moore BWC, 06:40:07–06:40:12; *see also* Doc. S-51, Pingry BWC, 06:40:07–06:40:15.

to shake or jar, but those appear to have been attributable to road conditions, not Defendant's driving. The drive appeared calm and quiet, and no complaints by Plaintiff can be heard on the camera footage. *See id.* When Defendant Moore pulled into the sally-port area, he opened the back door for Plaintiff, and Plaintiff appeared to be in the exact same position Defendant Moore recommended he sit before they left the scene—with his back against the door and his legs across the seat. *See* Doc. S-51, SP, 04:21:00–04:21:23. He was not "wedged" on the floor of the car. No one helped him out. He slowly scooted out on his own. *See id.*[4]

Finally, Plaintiff alleges he was "denied ambulance" and "hospital" by orders of Defendant Moore. *See* Doc. 1 at 4. He implied during his deposition that Defendant Moore prevented him from being treated or taken to the

---

[4] Curiously, the plaintiff in *Kostrzewa* also alleged, as does Plaintiff, that he was knocked against the plastic partition in the car and had "to wedge himself" on the floor to keep from being tossed around. 247 F.3d at 640. Even if those facts were enough to state a claim in the *Kostrzewa* case—a case that is not binding on this Court—the video evidence belies Plaintiff's unsupported claim that these things happened to him.

Plaintiff also testified at his deposition that Defendant Moore drove to the jail "in a roundabout way" and was not kind or helpful in getting him into the car so that he would not hurt himself. *See* Doc. 48-2 at 28. Although not material to Plaintiff's claims, the video evidence blatantly contradicts these statements as well. Defendant Moore took the highway, and he was respectful in his interactions with Plaintiff, calling him "sir" or "buddy," or "bubba," and even readjusted Plaintiff's handcuffs when Plaintiff complained they were hurting, advised Plaintiff how to situate himself on the seat to be most comfortable, and ensured Plaintiff had enough (or not too much) air. *See* Doc. S-51, Moore BWC, 07:00:30–07:01:07, 07:21:40–07:23:23, 07:44:15, 07:56:12.

hospital by EMTs and talked the nurses at the jail out of sending him to the hospital before being booked. *See* Doc. 48-2 at 26, 31–32. He also testified that no officer asked him at the scene if he needed medical attention. *Id.* at 25. According to the BWC footage, Defendant Moore requested rescue within a minute of helping to secure Plaintiff in handcuffs. *See* Doc. S-51, Moore BWC, 06:40:51. He also asked Plaintiff, "What hurts, buddy, so I can tell rescue?" *Id.*, 06:41:42–06:41:44. Plaintiff responded by saying he was "fine" and only "scraped up." *Id.*, 06:41:44–06:41:50. Defendant Moore told Plaintiff that they were going to have "rescue come to check [him] out" regardless. *Id.*, 06:42:49.

Plaintiff conceded at his deposition that the paramedics evaluated him at the scene before he was transported to the jail. *See* Doc. 48-2 at 23. He said that the paramedics "could tell by [him] sitting on the side of the road that [he] didn't have . . . broken bones or anything and [he] didn't need medical attention," and no paramedic concluded after assessing him that he had to be transported to the hospital. *Id.* at 23, 27. The BWC footage shows that Defendant Moore never spoke directly with the EMTs, did not intervene in or observe their physical evaluation of Plaintiff, and did not decide (or weigh in on) whether Plaintiff should be taken to the hospital before the jail. *See* Doc. S-51, Moore BWC, 06:46:20–06:52:40. Defendant Moore was engaged in investigatory matters while EMTs were tending to Plaintiff. *See id.*

After EMTs left and Plaintiff had been in the backseat of Defendant Moore's patrol car for nearly one hour—while still at the scene—something Plaintiff said to Defendant Moore prompted Moore to ask Plaintiff if he wanted rescue to come back. *See id.*, 07:56:17. Plaintiff cannot be heard, but Defendant Moore responded by saying he was not a doctor, and he would do whatever Plaintiff wanted him to. *Id.*, 07:56:17–07:56:40. Plaintiff apparently declined rescue. *See id.* In the sally-port area at the jail, a nurse evaluated and treated Plaintiff's wounds. *See* Doc. S-51, SP, 04:26:30–04:32:10.

As explained, the video evidence blatantly contradicts Plaintiff's deposition testimony and Complaint allegations in most material respects, such that they are not to be credited. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The video evidence indisputably shows Defendant Moore did not use excessive (or any) force against Plaintiff and did not deny him medical care.[5]

---

[5] Given Plaintiff had just suffered a traumatic accident, was admittedly high on methamphetamine, and conceded at his deposition that he did not know "which officer arrived first, second, third, or fourth" and the way "he remember[ed events] might not be exactly the way [they] happened," Doc. 48-1 at 21, 30–31, 43–44, the

Even if Plaintiff should have been sent to a hospital for treatment before being booked, as an officer with no medical expertise, Defendant Moore was entitled to defer to the judgment of EMTs at the scene and the nurses at the jail regarding whether Plaintiff needed emergency medical attention. *See Mann*, 588 F.3d at 1308 (holding the plaintiff's argument that arresting officers were deliberately indifferent to her serious medical needs "without merit" where the officers called emergency medical personnel to the scene, and the "medically trained" professionals concluded the plaintiff was not "in any immediate medical distress" that would have warranted transport to the hospital). There is no evidence that Defendant Moore knew Plaintiff required more treatment than what was provided but actively prevented a medical professional from rendering or arranging for that treatment. On the contrary, Defendant Moore is the one who called rescue initially and asked Plaintiff if he wanted to have rescue called back to the scene when Plaintiff later started complaining about his injuries.

Defendant Moore carries his burden on summary judgment showing he is entitled to qualified immunity, and Plaintiff fails to point to evidence in the record to demonstrate a genuine dispute of material fact.

---

Court gives him the benefit of the doubt regarding his motivations for initiating and prosecuting this action premised on allegations that are so at odds with reality.

Accordingly, it is **ORDERED**:

1.   Defendant Moore's Motion for Summary Judgment (Doc. 47) is **GRANTED**.

2.   The **Clerk** is directed to enter judgment in favor of Defendant Moore, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of April 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-6
c:
Shawn Wilson
Counsel of Record